HELENE N. WHITE, Circuit Judge,
(dissenting).
I respectfully dissent.
Even if Navarro’s removal or deportation lasts only several months, which is highly unlikely, it will leave three United States citizens, his wife and two young children, homeless and destitute. If that does not rise to the level of “exceptional and extremely unusual hardship,” one is left to wonder, what does?
Respondent acknowledges that mischar-acterization of evidence could rise to legal error, as held in Mendez v. Holder, 566 F.3d 316 (2d Cir.2009). The petitioner in Mendez challenged the IJ’s determination, affirmed summarily by the BIA, that he had not shown that his removal would result in exceptional and extremely unusual hardship to his U.S.-citizen children. The Mendez court aptly observed:
We need not decide in this case whether the circumstances concerning the health issues faced by Petitioner’s children, considered in light of the questionable availability of medical care for their health needs in the event they return to Mexico with their parents, are so extreme that an agency decision finding no “exceptional and extremely unusual hardship” would be “without rational justification or based on an erroneous legal standard,” Barco-Sandoval [u Gonzales ], 516 F.3d [35,] 39 [ (2d Cir. 2008) ] (internal quotation marks omitted), under the standards the BIA has established for determining whether an application for cancellation of removal demonstrated an “exceptional and ex *450 tremely unusual hardship.” See In re Gonzalez Recinas, 28 I. & N. Dec. 467 (BIA 2002); In re Andazola-Rivas, 28 I. & N. [Dec.] 319 (BIA 2002); In re Monreal-Aguinaga, 23 I & N. Dec. 56 (BIA 2001).
Instead, we dispose of this petition by noting that the agency’s decision rests on factfinding “which is flawed by an error of law.” Barco-Sandoval, 516 F.3d at 40. For example, although Petitioner testified that his nine-year-old daughter has around twenty-five asthma attacks each year, several of which require emergency visits to the hospital; that she must use a home nebulizer, a specialized piece of equipment, in addition to an ordinary inhaler; and that doctors do not expect her to outgrow her asthma, the IJ did not address any of these factors. Furthermore, the IJ stated incorrectly that “[t]he only evidence respondent has offered regarding this [asthma] is a letter from Dr. Hector Florman of the National Pediatric Center which only indicates that the children have been treated on multiple occasions with respiratory infections” and concluding that “[t]here’s nothing in the record to suggest that the asthma suffered ... is severe in any way.”
In addition, although the IJ concluded that Petitioner’s son, who suffers from Grade II Vesicoureteral Reflux-a condition that may lead to kidney or liver failure — was “cured or ... certainly in remission,” the IJ did not address the fact that the son’s yearly examinations are highly specialized and that Petitioner’s area of Mexico, if he and his family are removed, has few doctors — let alone kidney specialists — and that Petitioner testified that he will not be able to travel to see specialized doctors or to pay for treatment.
We readily acknowledge that the agency does not commit an “error of law” every time an item of evidence is not explicitly considered or is described with imperfect accuracy, but where, as here, some facts important to the subtle determination of “exceptional and extremely unusual hardship” have been totally overlooked and others have been seriously mischaracterized, we conclude that an error of law has occurred. The IJ did not make an adverse credibility determination, and we are not confident that, after taking the overlooked evidence into account and describing it accurately, the agency would come to the conclusion that Petitioner has not met the standard of “exceptional and extremely unusual hardship.” See, e.g., In re Gonzalez Recinas, 23 I. & N. Dec. at 470 (“[T]he hardship standard is not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief.” (emphasis added)).
Accordingly, we grant this petition and remand the case to the BIA to evaluate — cleansed of these errors — whether Petitioner established that his citizen children will suffer “exceptional and extremely unusual hardship” in light of the standards the BIA itself established in In re Monreal-Aguinaga and subsequent cases.
Mendez, 566 F.3d at 322-23.
In the present case, the BIA mischarac-terized the children’s amply-documented medical conditions, stating that the children “reportedly have experienced ear infections and allergies,” that Olivia “experienced one episode of a seizure due to high fever,” and that Navarro testified that he had no proof of “severe” illness in the *451 children.”[1] AR at 4. This assessment of the children’s medical conditions is contrary to Miller’s testimony and the voluminous medical records Navarro submitted, which establish that at age 2, Olivia suffered a grand mal seizure due to a high fever and ear infection and must be monitored, and that she had 30 ear infections before age 2 1/2, when tubes were placed in her ears. Miller testified that the doctor warned that if a seizure were to recur Olivia could suffer brain damage. The medical records also showed that Olivia continues to have ear infections since the tubes were placed, and that she also has breathing difficulties and allergies that worsen in heat and summer. Similarly, Saul’s medical records show more than 25 doctor visits in 4 years for upper respiratory infections and allergies, and several treatments with Albuterol, which is prescribed for treatment of pulmonary diseases, including asthma, and administered through a nebulizer and face mask. Contrary to the BIA’s determination, Miller’s testimony and the children’s medical records establish that both children suffer from recurrent medical conditions and require frequent treatment. And, Navarro testified that if his family joined him in Mexico, medical treatment for the children, if available, would be unaffordable, and the heat and humidity there would exacerbate the children’s medical conditions.
More importantly, the BIA overlooked or disregarded that Navarro’s United States citizen wife and their two young United States citizen children will be left homeless and destitute if Navarro is removed to Mexico, even if only for a few months. The BIA’s unqualified statement that Miller “is employed” is a gross mis-characterization — the record is clear that Navarro is, in effect, the sole wage earner for the family in that Miller works six hours a week and earns approximately $88 every two weeks, and has to pay for child care while she works. The record is also clear that the Navarro family receives no outside financial assistance and that Miller’s parents are unable to assist financially or house her and the children. Navarro testified that the cost of living is high in Mexico, that painters earn approximately $ 20 a day, and that on that income he would be unable to provide any support to his wife and children.
The BIA apparently agreed with the IJ’s determination that Miller would be able to sell the Navarros’ assets and thereby make the land-contract payments for three to six months, presumably until Navarro is able to legally immigrate to the United States. This conclusion defies reason and is unsupported by the record. The “assets” are two used cars with a combined value of $ 8,500 and $ 2,500 of equity in the duplex in which the Navarros live. Even if Miller could sell one or both of the cars and even if she could miraculously obtain a loan on her near non-existent pay (having lost Navarro’s salary), she would not be able pay the $ 1,363 in monthly expenses and in addition pay for food, medicine, clothing, and other necessities even for three months. Query whether Miller could work and transport the children without any vehicle, and whether any financial institution would loan her money given her meager earnings?
*452 The BIA ignored that Navarro would need two waivers to re-enter the United States, a waiver for his illegal entry and a waiver of the final order of removal. See INA § 212(a)(9)(A)(i) and (B)(i)(II) (8 U.S.C. § 1182(a)(9)(A)(i) and (a)(9)(B)(ii)). The BIA ignored that many waiver applications take between 12 to 15 months for adjudication,[2] much longer than the IJ surmised. The meager assets the Navarros have would be needed for the family’s survival and to pay the substantial immigrant-visa charges and related travel costs for Navarro. In sum, regardless whether Navarro is eventually able to lawfully immigrate to the United States, in the interim, the three United States citizens he alone supports, his wife and two children, will be left homeless and destitute.
As in Mendez, the BIA here mischarac-terized or overlooked salient facts that were essential to the determination of exceptional and extremely unusual hardship. For these reasons, I would grant the petition for review and remand to the BIA to evaluate — absent mischaracterization of the evidence — whether Navarro established that his United States citizen wife and minor children will suffer “exceptional and extremely unusual hardship.”

. Navarro, who testified with the aid of an interpreter, did not handle cross-examination very well. He was asked on cross-examination if he had proof that his children suffered from "severe” illness, and he answered no. However, Navarro’s testimony as a whole, Miller’s testimony, and the children’s extensive medical records establish that both children suffer from recurrent medical conditions that require treatment and medication.

. Navarro’s appellate brief asks this court to take judicial notice of this time period, attaching a summary of the waiver process that states:
In certain circumstances, individuals who have been found ineligible for an immigrant visa under the Immigration and Nationality Act (INA) may be eligible to apply for a waiver of the ineligibility. At the time of the immigrant visa interview, the consular officer will make a determination as to whether an applicant is waiver eligible. If the consular officer finds an applicant ineligible for a visa, but eligible to apply for a waiver, the officer will give the applicant instructions on how to apply for the waiver and will direct them to make a waiver appointment.
The waiver application and supporting documentation are reviewed by the U.S. Citizenship and Immigration Services (USCIS), which has jurisdiction for adjudicating all waiver applications submitted in Ciudad Juarez. If the waiver is readily approvable, the applicant usually receives his or her immigrant visa via DHL courier within a few days of the waiver appointment. Otherwise, the waiver application is referred for further review and the applicant is given the opportunity to submit additional hardship evidence. Applicants are notified in writing of the waiver decision and given instructions on how to proceed. Waiver applications referred for further review normally take between twelve to fifteen months to process.
Embassy of the United States, Visas > Immigrant Visas > Waivers — The Waiver Process, http://ciudadjuarez.usconsulate.gov/waivers. html (last visited November 9, 2012). The Department of State manages this website.